UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
HAYDEN RYAN GOPIE,

                              Petitioner,

                  v.

TODD LYONS, et. al.,

                              Respondents.
--------------------------------------------------------X

**MEMORANDUM
AND ORDER**
25-CV-05229-SJB

**BULSARA, United States District Judge:**

Petitioner Hayden Ryan Gopie, a legal permanent resident of the United States, and citizen of Trinidad and Tobago, was arrested on September 15, 2025, by U.S. Immigration and Customs Enforcement ("ICE") officers following a routine state court probation check-in for a misdemeanor offense.  (Pet. for Writ of Habeas Corpus dated Sep. 17, 2025, Dkt. No. 1 ¶¶ 1, 4).  He subsequently filed a petition for habeas corpus with this Court two days later.  (*Id.* ¶ 8).  Gopie pursued release, including through an application seeking bond, in immigration court, which was denied.  (Resp'ts' Letter dated Oct. 3, 2025, Dkt. No. 13 at 1).  Following the expiration of the time to appeal the denial of bond, this Court held a hearing (on November 6, 2025), at which time it became clear that Gopie was maintaining, and not withdrawing, his petition in this Court.[1]  Following briefing of the issues raised at the hearing, the Court grants the writ, and directs Respondents to release Gopie forthwith.

---

[1] Though the Government was filing letters with the Court, arguing his petition had become moot, Petitioner's counsel failed to respond to those suggestions or

There is a threshold problem with Gopie's arrest and detention that requires granting of the writ. For a non-citizen not subject to mandatory removal from the United States (and Gopie is a legal permanent resident), the Government must commence removal proceedings by issuing a "Notice to Appear" (NTA). The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed. *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021) ("The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, requires the government to serve 'a notice to appear' on individuals it wishes to remove from this country."). 8 C.F.R. § 1236.1 provides, in relevant part, "[a]t the time of issuance of the notice to appear, or at any time thereafter . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1.

Here the Government—by its own telling—issued the arrest warrant in June 2024, with the anticipation of its execution *a year later*: on July 14, 2025. (Decl. of Deportation Officer Anthony Burer, attached to Resp'ts' Resp. to O.S.C. as Attach. 1 ("Burer Decl."), Dkt. No. 11-1 ¶ 10). And it was issued well before it issued a NTA for Gopie. Indeed, the Government arrested Gopie on September 15, 2025. (*Id.* ¶ 11). It then issued an NTA *three days later* on September 18, 2025. (*Id.* ¶ 15). In other words,

_____

otherwise indicate his intention to seek relief here, as opposed through immigration bond proceedings.

when ICE arrested Gopie they had no authority to do so.[2]  *See Castañon Nava v. Dep't of Homeland Sec.*, --F. Supp. 3d --, No. 18-CV-3757, 2025 WL 2842146, at *17 (N.D. Ill. Oct. 7, 2025) ("ICE lacked statutory and regulatory authority to engage in its policy of issuing I-200 warrants to collaterals in the field *without the concurrent or prior issuance of an NTA.*"); *see also Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1224 (S.D. Cal. 2019) ("DHS regulations authorize an immigration officer to formally arrest and take the alien into custody pursuant to a Form I-200 Warrant of Arrest at the time an NTA is issued."); *Castellar v. Nielsen*, No. 17-CV-0491, 2018 WL 786742, at *3 (S.D. Cal. Feb. 8, 2018) ("At the time an NTA is issued, DHS regulations authorize an immigration officer to formally arrest and take the alien into custody." (subsequent history omitted)).  That is a dispositive and independent basis to grant the writ.[3]

Separately, due process required ICE make a custody determination at the time, or before, it arrested Gopie.  But it failed to do so.  That is the second basis on which the Court grants the writ.

Section 1226(a) provides that the Attorney General—or its designated officers— may "detain" or "release" a noncitizen, pending a decision on whether he is to be

---

[2] Respondents do not argue that ICE had the ability to arrest Gopie without a warrant, and employ a procedure other than that set forth in § 1236.1.  If there was, such arguments have not been presented to the Court.

[3] Respondents, without citing a case, offer an implausible reading of 8 C.F.R. § 1236.1—that the word "may" means that the NTA is not required prior to use of the warrant.  (Resp'ts' Letter dated Nov. 12, 2025 ("Resp'ts' Nov. 12 Letter"), Dkt. No. 19 at 2–3).  The discretion in the regulation concerns the issuance of the warrant and arrest— ICE is not required to take those steps—but there is no leeway to avoid issuance of an NTA prior to arrest for a discretionary § 1226(a) removal.

removed from the United States.  8 U.S.C. § 1226(a).  "This language undoubtedly vests broad authority to arrest and detain . . . but due process must account for the wide discretion . . . to arrest *any* person in the United States suspected of being removable." *Lopez Benitez v. Francis*, --F. Supp. 3d--, No. 25-CV-5937, 2025 WL 2371588, at *10 (S.D.N.Y. Aug. 13, 2025) (quotations omitted).  This is a discretionary, not mandatory, action to detain a non-citizen.  *Maria Jose Tumba Huamani v. Ladeon Francis*, 25-CV-8110, 2025 WL 3079014, at *5 (S.D.N.Y. Nov. 4, 2025).  "Individuals detained pursuant to Section 1226(a) 'have not received a final decision as to whether they are to be removed.'"  *Salgado v. Francis*, No. 25-CV-6524, 2025 WL 2806757, at *4 (S.D.N.Y. Oct. 1, 2025) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020)).

But "*before* the Government may exercise such discretion to detain a person," Section 1226(a) and 8 C.F.R. 1236.1(c)(8) "require ICE officials to make an individualized custody determination."  *Lopez Benitez*, 2025 WL 2371588, at *10 (emphasis added).  In numerous cases, judges have interpreted the statute this way: before or contemporaneous with detaining a noncitizen, there must be a custody determination. *E.g., Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020); *Huamani*, 2025 WL 3079014, at *6–*8; *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765, at *10 (E.D.N.Y. Sep. 29, 2025); *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *9 (E.D.N.Y. Oct. 5, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924, 2025 WL 2637503, at *1 (N.D. Cal. Sep. 12, 2025) ("When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination.").  "ICE must allow the noncitizen to demonstrate to the

satisfaction of the officer that [ ] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Kelly*, 2025 WL 2381591, at *3 (quotations omitted). And "[a]n individual detained pursuant to Section 1226(a) who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release." *Salgado*, 2025 WL 2806757, at *8.

Here there is little factual dispute. Petitioner was arrested by ICE agents on September 15, 2025. (Burer Decl. ¶ 11). Respondents provide no information about what happened on September 15 as it relates to the required custodial determination—what, if anything, the arresting officer and Petitioner discussed, or what analysis or conclusion was made about custody. The next day, September 16, "an ICE officer completed a custody classification assessment and concluded that [Petitioner] should be classified as 'high risk.'" (*Id.* ¶ 12). What this "assessment" was, or how it was performed is not explained by ICE. If there is a document that memorializes the assessment, it was not provided to the Court. And the Government declined to take the Court's invitation to have the ICE officer—or its affiant—testify to clarify the record and explain the unsaid. (Tr. dated Nov. 6, 2025 ("Nov. 6 Tr."), at 34:7–35:23).

On September 16, Petitioner was "served with a Notice of Custody Determination," informing him that "the authorized ICE official determined" Petitioner "would be detained." (Burer Decl. ¶ 13). The Government did not provide the Court with the Notice of Custody Determination. Nor did it explain whether the officer who conducted the classification assessment ("an ICE officer"), (*id.* ¶ 12), is the same "ICE official" who made the determination that Petitioner should be detained, (*id.* ¶ 13). If

5

they were two different people, the Court has no idea whether the "ICE official" saw or relied on the initial "custody assessment." In any case, the declaration makes no mention of whether the detention determination was made as a matter of discretion, or part of a mandatory policy, or what was considered in reaching the result. Nor does the declaration clarify whether the officer spoke with Petitioner affording him an opportunity to demonstrate his amenability to release. At bottom, the detention determination—whether made by one or two people, with or without the Petitioner's input, based on mandatory rules or discretionary judgment—was made *after* the Petitioner was arrested, not before or contemporaneous with his arrest as required by the statute and regulations. These practices violate basic due process requirements. By not making a prior or contemporaneous determination of custody, ICE failed to provide pre-deprivation process required in this setting. *See Mathews v. Eldridge*, 424 U.S. 319 (1976); *Kelly*, 2025 WL 2381591, at *3 ("[T]he absence of any deliberative process prior to, or contemporaneous with, the deprivation . . . a writ of habeas corpus is the only vehicle for relief."); *Huamani*, 2025 WL 3079014, at *9 ("Respondents do not argue that Petitioner was afforded any sort of process before her re-detention. . . . She is therefore entitled to release."); *J.U.*, 2025 WL 2772765, at *10 (finding violation and granting writ where "no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner[.]"); *Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("[T]he process Respondents provided prior to his re-detention was 'absolutely none.' Given the significant liberty interest at stake, the high

risk of erroneous deprivation, and Respondents failure to show a significant interest in Petitioner's detention, Petitioner is entitled to more process than he received.").

Respondents make a series of arguments in response, none of which have any merit. *First*, they contend that Gopie should have exhausted his remedies in immigration court—namely by appealing his denial of bond to the Board of Immigration Appeals. (Addendum to Resp'ts' Mem. of Law in Resp. to O.S.C. dated Nov. 5, 2025, Dkt. No. 18 at 2). But a bond hearing before an immigration judge is a "re-determination" of custody—it assumes that a valid custody determination was made in the first instance. Here, Gopie's "custody" determination was made after-the-fact. That alone makes it invalid. *See Kelly*, 2025 WL 2381591, at *3 ("Such hearings, however, are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes it initial decision to detain. Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (quotations omitted); *Lopez Benitez*, 2025 WL 2371588, at * 13 (same); *Huamani*, 2025 WL 3079014, at *8 (same). Respondents' declaration tells the Court nothing about this initial determination—even as to who made it, or the basis for it. *Supra* at 5–6. There is no evidence, in other words, to conclude that even the after-the-fact determination comported with due process.[4] Gopie is not required to exhaust a process that was deficient from the outset.

---

[4] This is why the case cited by Respondents, *Fontanelli as Next Friend of Bernal Garcia v. Francis*, provides them no assistance. (Resp'ts' Nov. 12 Letter at 3). There the ICE officers made a contemporaneous determination of custody, 1:25-CV-07715, 2025

*Second*, Respondent contends that § 1226(a) does not require a custody determination prior to or contemporaneous with detention by an ICE officer. (Resp'ts' Nov. 12 Letter at 1–2). Indeed, they take the position that the statute and regulation do not require a custody determination "within a specified period of time." (*Id.* at 1). But in the SDNY, Respondents took a different position—conceding that a custody determination must take place contemporaneous to arrest and detention. *See Lopez Benitez*, 2025 WL 2371588, at *10 ("Respondents concede that under the applicable regulations, when an alien is apprehended, a DHS officer makes an initial custody determination.") (quotations omitted). In any event, Respondents' current argument ignores both the regulatory and constitutional overlay on § 1226(a). That is, the requirement that a custody determination by an ICE officer *before or when* the person is detained—and not afterwards, without the participation of the person being arrested—is required by ICE's own regulation, 8 C.F.R. 1236.1, *see id.* at *10; *Kelly*, 2025 WL 2381591 at *3, and the due process clause, which in this context requires *pre*-deprivation process before someone is deprived of their liberty, *see Huamani*, 2025 WL 3079014, at *6; *J.U.*, 2025 WL 2772765, at *9. ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here. *Gonzalez v. Joyce*, No. 25-CV-8250, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) ("The suggestion that

---

WL 2773234, at *2 (S.D.N.Y. Sep. 29, 2025), which they did not do here. And furthermore, Respondents' counsel—at the hearing—could provide no details or insight about the hearing before the immigration judge (except that transcripts were not regularly made), making their argument that Gopie received sufficient post-deprivation process nothing more than empty words. (Nov. 6 Tr. at 25:11–27:14).

government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment.").[5]

*Third*, they claim that "logistical challenges" prevented the pre-arrest custodial determination, and that procedural failure should be excused, since Gopie received a post-arrest bond hearing.  (Resp'ts' Nov. 12 Letter at 2).  Nothing in the ICE officer's declaration says that he was unable to conduct a custody determination at the time of Gopie's detention—the logistical difficulties, in any event according to the officer, related to lodging Gopie at the Nassau County Jail.  (Burer Decl. ¶ 11).  He says nothing about why the Jail's cut-off time affected the timing of the custody determination.[6]

---

[5] Respondents also contend that the cases requiring a custody determination occur before or contemporaneous to detention are only District Court cases, and those cases involved an application of 8 U.S.C. § 1225.  (Resp'ts' Nov. 12 Letter at 2).  But all the cases are unidirectional; they all hold that the determination must be made prior to or contemporaneous to detention.  And that is not surprising, since except in this case, Respondents took the position that this is what the regulation and § 1226 require.  As for the argument that these other cases involved § 1225 initially, it ignores the fact that each judge also analyzed the propriety of ICE's conduct under § 1226.

[6] Respondents cite to 8 C.F.R. § 287.3(d), claiming that an officer has 48 hours to make a custody determination.  (*Id.* at 2).  That regulation applies to individuals arrested without a warrant; Gopie was arrested with a warrant.  *See Navarro-Chalan v. Ashcroft*, 359 F.3d 19, 23 (1st Cir. 2004) ("Regulation 287.3, by its own terms, applies only to warrantless arrests.").  But more fundamentally, the regulation contemplates an immigration officer, other than the arresting agent, examining the individual in order to see if ICE should proceed with the case (and that was not done here).  8 C.F.R. § 287.3(b).  And furthermore, the regulation requires ICE to provide a detainee warnings and information (including about legal services), as well as that removal proceedings were formally underway.  *Id.* § 287.3(c).  That was not done here either.  This regulation creates far more problems for the Respondents than they appear to recognize.

The writ is granted.  Gopie is to be released forthwith.  Respondents are directed to file a letter regarding their compliance with this order no later than **9:00 a.m. on November 14, 2025.**

SO ORDERED.
*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  November 13, 2025
       Central Islip, New York